# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-cr-318 (JRT/ECW) |
| Plaintiff, | |
| v. | **CORRECTED** |
| RAIVON TREYSHAN BALENGER, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

On December 10, 2019, Defendant Raivon Treyshan Balenger ("Balenger" or "Defendant") was indicted on one count of Felon in Possession of Firearm. (Dkt. 10.) This matter is before the Court on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 22). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

The Court held a motion hearing on February 7, 2020. Thomas Calhoun-Lopez, Assistant U.S. Attorney, appeared on behalf of the United States of America. Douglas Olson, Office of the Federal Defender, appeared on behalf of Balenger, who was present at the hearing on the instant motion. During the hearing on the motion to suppress, the Government presented a witness, St. Paul Police Officer Pheng Xiong, and offered six exhibits relevant to the search and seizures at issue. The parties have filed their respective post-hearing memoranda. For the reasons stated below, the Court

recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 22) be denied.

## I.     FACTUAL BACKGROUND

At the February 7, 2020 hearing, Officer Xiong testified about his encounter with Balenger on the night of November 9, 2019, which led to Balenger's arrest.

Officer Xiong testified that he was assisting with police dispatch calls on November 9, 2019. (Transcript (Dkt. 38) ("Tr.") at 5.) Officer Xiong is a canine officer and was working with canine partner Tripp on the night in question. (Tr. 5.) Officer Xiong testified that he responded to a call at approximately midnight on November 9, 2019. (Tr. 7.) Officer Xiong responded to this call in his fully marked police SUV and dressed in his police uniform with full markings. (Tr. 6-7.) Officer Xiong was dispatched to the intersection of Carroll and Avon because there had been a report of someone firing a gun in the air, which included a witness statement giving a description of the suspect. (Tr. 7, 23.) The description was of a taller black male wearing a buttoned-up shirt with a gun that had a green laser sight. (Tr. 7-8.) Officer Xiong testified that he had this information as he was arriving to the scene of the reported incident. (Tr. 8.)

Officer Xiong approached the scene of the incident where a large apartment complex was located. (Tr. 8.) Officer Xiong turned north on Grotto and observed an individual standing by himself up against the side of one of the buildings of the apartment complex. (Tr. 9, 24.) According to Officer Xiong, it appeared as though the individual was trying to hide given the way he was positioned up against the wall of the apartment

building.  (Tr. 9, 24.)  Officer Xiong noted that there had been other police in that area looking for the suspect.  (Tr. 9.)

Officer Xiong used his police squad car's spotlight and shined it on the suspect. (Tr. 10; Gov't Ex. 7 at 03:49-03:52.)  When Officer Xiong did this, the suspect looked at him, turned around, and then began to jog away.  (Tr. 10; Gov't Ex. 7 at 03:49-03:54.) Officer Xiong testified that he told the suspect "that I was the police and to stop."  (Tr. 10, 25.)  Officer Xiong can be heard on his dashboard video yelling repeatedly at the individual that he was police and to stop.  (Gov't Ex. 6 at 03:51-03:56.)  Officer Xiong noted that he told the individual to stop because he somewhat matched the description of the suspect, as a taller black man with buttoned-up shirt in the area reported by the dispatch call.  (Tr. 10.)  Officer Xiong also stated that the suspect was wearing a black jacket with fancy green designs.  (Tr. 10.)

According to Officer Xiong, his suspicion of the individual increased when the suspect began to run given the nature of the call and the safety concerns at issue.  (Tr. 10.)  The suspect failed to stop when Officer Xiong commanded him to stop and instead continued to run into a parking lot.  (Tr. 11.)  Officer Xiong pursued the suspect in his squad car and continued to yell at him to stop, identifying himself as the police; however, the suspect continued to run and then ran in between two buildings in the apartment complex.  (Tr. 11, 25; Gov't Ex. 7 at 04:07-04:12.)

Officer Xiong got out of his vehicle and yelled at the suspect "police canine you're going to get bit" but the suspect still failed to stop and fled through a courtyard, around a building, and then jumped a fence.  (Tr. 11-12, 26; Gov't Ex. 8 at 1:16-1:22.)  The

3

suspect lost his cell phone and sunglasses when he jumped the fence.  (Tr. 26.)  Other officers were assisting with the pursuit on foot.  (Tr. 14.)  Officer Xiong lost the suspect around a corner of a building, but other officers were still in pursuit behind the suspect.  (Tr. 14-15.)

Officer Xiong and another officer caught up with the suspect around a car in a parking lot.  (Tr. 15, 27.)  As Officer Xiong got close to the suspect, he noticed that the suspect was grabbing at the waist of his pants, which, given that the call involved a firearm, made Officer Xiong concerned that the suspect might be reaching for a weapon.  (Tr. 15-16, 31.)  However, Officer Xiong did not see a firearm.  (Tr. 31.)  As Officer Xiong grabbed onto the suspect, they fell onto the hood of the vehicle.  (Tr. 15.)  The suspect was not following directions and was tensing up, but officers were eventually able to get handcuffs on the suspect.  (Tr. 16-17, 27-28.)

Officer Xiong testified that Officer Joseph Piram conducted a pat-down and found a firearm with a green laser on the suspect—whom Officer Xiong and other officers identified as Balenger.  (Tr. 17-18.)  Officer Xiong testified that he did not know where on Balenger the firearm was found.  (Tr. 29.)

## II.   DISCUSSION

Balenger requests that the Court suppress physical evidence obtained as a result of an illegal arrest and search and seizure on the following grounds: Balenger was arrested without a warrant and without probable cause on November 9, 2019, and any evidence, including the firearm in this case, seized as a result of that illegal arrest, should be suppressed.  (Dkt. 37.)  Balenger asserts that although the Government may argue that he

4

committed some crime, it is not illegal for a person to run from an officer who is yelling at him to stop from his squad car and he was not required under the law to heed the verbal commands of an officer yelling from his squad car. (Dkt. 37 at 5.) Therefore, Balenger argues that Officer Xiong did not have probable cause to arrest him and his flight does not change this calculus. (Dkt. 37 at 5.) Balenger also asserts that his arrest was not supported by probable cause under the premise that he violated Minn. Stat. § 169.487, subd. 6, the Minnesota "fleeing on foot" statute, because Officer Xiong did not have any information regarding the reasons for Balenger's flight. (Dkt. 37 at 6.)

The Government counters that Officer Xiong had reasonable suspicion to conduct an investigative stop of Balenger: Balenger matched the description of a man reportedly firing shots in the air, was at the scene of the shooting, and appeared to be hiding from Officer Xiong. (Dkt. 39 at 4.) Balenger immediately confirmed these suspicions by fleeing. (Dkt. 39 at 4.) According to the Government, Officer Xiong therefore had probable cause to arrest Balenger for fleeing a police officer on foot in violation of Minn. Stat. § 169.487, subd. 6. (Dkt. 39 at 5-6.)

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons . . . that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted), *overruled in part on other grounds by Davis v. Washington*, 547 U.S. 813 (2006). "[A]n officer may, consistent with the

5

Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citation omitted); *see also United States v. Dortch*, 868 F.3d 674, 678 (8th Cir. 2017) (finding that an officer may conduct an investigative stop and brief detention when he "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot") (quotation marks and citations omitted). "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

"While reasonable suspicion must be more than an inchoate hunch, the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Riley*, 684 F.3d 758, 763 (8th Cir. 2012) (internal quotation marks omitted). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995). "In addition, a person's temporal and geographic proximity to a crime scene, combined with a matching description of the suspect, can support a finding of reasonable suspicion." *United States v. Quinn*, 812 F.3d 694, 698 (8th Cir. 2016) (citation omitted). "In deciding whether the requisite degree of suspicion exists, we view the [an officer's] observations as a whole, rather than as discrete and disconnected occurrences." *United States v. Poitier*, 818 F.2d 679, 683 (8th Cir. 1987); *see also Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019) (citation omitted).

"[O]fficers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Hurd*, 785 F.3d 311, 314 (8th Cir. 2015) (citation and quotation marks omitted).  In addition, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)); *see also Hurd*, 785 F.3d at 314 (citation omitted).

Here, Officer Xiong had sufficient reasonable suspicion to briefly detain Balenger for investigative purposes.  Officer Xiong had information from a witness of shots being fired in the area of the apartment complex by a tall black man in a buttoned-up shirt.  Officer Xiong observed an individual closely matching this description acting in furtive manner alongside of the apartment complex in question around midnight.  Indeed, the video from Officer Xiong's dashboard camera shows Balenger turning and doubling back to avoid Officer Xiong, and trying to avoid his spotlight.  (Gov't Ex. 7 at 03:43-03:56.)  Given all of these facts, taken together with rational inferences from those facts, Officer Xiong had reasonable suspicion to initiate stop of Balenger.  *See United States v. Quinn*, 812 F.3d 694, 698 (8th Cir. 2016) (finding that reasonable suspicion existed where the suspect stopped within blocks of crime scene, 40 minutes after crime, late at night, partially matching description of suspect, and where the suspect acted suspiciously by looking over his shoulder); *United States v. Trogdon*, 789 F.3d 907, 912 (8th Cir. 2015) ("A reasonable officer would therefore be justified in concluding that the group's

7

immediate reaction upon seeing the officers—to walk briskly around the building and north toward the berm, where a car could not follow without driving off the road—constituted evasive action."). While Officer Xiong had sufficient reasonable suspicion to conduct an investigative stop at this point, the subsequent unprovoked flight at the sight of an officer can contribute to reasonable, articulable suspicion. *See Wardlow*, 528 U.S. at 124 (finding the suspect's flight upon seeing police officers while in a high-crime area justified *Terry* stop).

"Once a suspect is legally stopped, 'an officer who has reason to believe the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety." *United States v. Horton*, 611 F.3d 936, 940-41 (8th Cir. 2010) (quoting *United States v. Davis*, 457 F.3d 817, 822 (8th Cir. 2006)). Courts apply "an objective test when determining whether the police officer had reasonable, articulable suspicion for the pat-down. To pass this test, the officer does not need to be certain that the suspect was armed. Rather, a pat-down is permissible if a 'reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* at 941 (quoting *Terry*, 392 U.S. at 27). Here, the evidence is that shots had been fired by a person matching Balenger's description who had just fled from police and was observed grabbing something around his waist as he fled, which could have been a firearm. Given these facts, the Court finds that a reasonably prudent officer would be warranted in the belief that his safety or that of others was in danger, thereby giving officers a legal basis to conduct a pat-down search of Balenger's person for officer safety after his stop.

8

Moreover, the Court finds that Officer Xiong had probable cause to arrest Balenger for violating Minn. Stat. § 609.487, subd. 6 as a result of his flight from police. "Even though a warrant is typically required for an arrest, there are exceptions. One is when there is probable cause to believe that an individual is committing a crime in the officer's presence. *See United States v. Becerra*, No. 18-2777, --- F.3d.----, 2020 WL 2201761, at *1 (8th Cir. May 7, 2020) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). "'To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Section 609.487 provides: in relevant part as follows:

> Fleeing, other than vehicle. Whoever, for the purpose of avoiding arrest, detention, or investigation, or in order to conceal or destroy potential evidence related to the commission of a crime, attempts to evade or elude a peace officer, who is acting in the lawful discharge of an official duty, by means of running, hiding, or by any other means except fleeing in a motor vehicle, is guilty of a misdemeanor.

Minn. Stat. § 609.487, subd. 6.

In this case, Officer Xiong, while acting in the lawful discharge in of his duties, repeatedly identified himself as police and ordered Balenger to stop. Balenger repeatedly failed comply with officers' orders to stop during an extensive chase in the middle of the night in an area where gunshots had been recently fired. All of this information taken together provided officers with probable cause to arrest Balenger for fleeing from police

9

in order to avoid being detained.  *See State v. Warren*, No. A17-1981, 2018 WL 6837086, at *4 (Minn. Ct. App. Dec. 31, 2018), *rev. denied* (Mar. 27, 2019) ("Second, Warren did not comply with Officer Miles's order to stop, instead fleeing the scene.  Minnesota Statutes section 609.487, subdivision 6 (2016) provides that to attempt to evade or elude a peace officer acting in the lawful discharge of an official duty by any means other than fleeing in a motor vehicle is a misdemeanor.  The circumstances, assessed objectively, supported a strong suspicion to believe that Warren committed two criminal offenses.  The district court therefore did not err by concluding that Officer Miles had probable cause to arrest Warren.").  While Ballenger argues that officers did not know why he was running away, it evident from the testimony and video of the chase that Balenger's refusal to stop fleeing when repeatedly instructed by police to stop was because he did not want to be detained by police.[1]  This is sufficient for the purposes of probable cause.

Once probable cause for an arrest existed, officers had the ability to conduct a pat-down search of Balenger incident to arrest.  *See United States v. Haynes*, No. 19-1607, --- F.3d ----, 2020 WL 2123346, at *3 (8th Cir. May 5, 2020) (citing *United States v. Jerde*, 481 F. App'x 280, 282-83 (8th Cir. 2012)).

For all of the reasons set forth above, the Court finds the motion to suppress should be denied.

---

[1] The Court notes that Balenger has presented no evidence that he did not hear the commands from the police to stop.

### III.  RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:** Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 22) be **DENIED**.

DATE:      May 26, 2020　　　　　　　　　　　*s/ Elizabeth Cowan Wright*
　　　　　　　　　　　　　　　　　　　　　　ELIZABETH COWAN WRIGHT
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).