UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-318 (JRT/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RAIVON TREYSHAN BALENGER, )<br>)<br>Defendant. ) | **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING** |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Thomas Calhoun-Lopez, Assistant United States Attorney, hereby submits this memorandum setting forth its position with respect to sentencing factors in this matter.

The United States asks the Court to sentence Defendant Raivon Treyshan Balenger to a term of imprisonment within the guidelines range of 92 to 115 months. Balenger possessed a firearm as a felon four times over. He has a violent criminal history that includes armed robbery of an apartment and an assault in which he shot a man in the leg. He fled police on foot, and was apprehended after an officer physically stopped and disarmed him. A sentence within the guideline range is reasonable and appropriate under the sentencing objectives of U.S. law.

# THE PRESENTENCE INVESTIGATION REPORT

## I. The Government's Position Regarding the Guidelines.

The United States agrees with the conclusions set forth in the Presentence Investigation Report (Document No. 108 (PSR)) concerning Balenger's guidelines calculations. Because Balenger committed the instant offense subsequent to sustaining two felony convictions of crimes of violence, the base offense level is 24 pursuant to U.S.S.G. § 2K2.1(a)(2). (PSR ¶ 15.) Because the firearm had previously been reported stolen, two levels are added pursuant to U.S.S.G. § 2K2.1(b)(4)(A). (PSR ¶ 16.) With credit for acceptance of responsibility, the total offense level is 23. (PSR ¶ 24.) With 16 criminal history points, Balenger's criminal history category is VI. (PSR ¶ 48.) The guidelines range is therefore 92–115 months' imprisonment. (PSR ¶ 88.)

# ARGUMENT

## II. The Appropriate Sentence in Light of 18 U.S.C. § 3553(a).

In addition to determining the Defendant's Sentencing Guideline range (18 U.S.C. § 3553(a)(4)), this Court is required to assess the other applicable sentencing factors under Section 3553(a) of federal sentencing law. Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct,

and to protect the public from further crimes of the defendant; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Pursuant to these factors, the United States requests the Court sentence the Defendant to a term of imprisonment within the guidelines range of 92–115 months.

### A. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and to Provide Just Punishment for the Offense.

Balenger's crime is serious, and merits a commensurate sentence. Balenger was a felon four times over when he possessed his firearm on November 9, 2019. (PSR ¶¶ 6, 10–12.) As the Supreme Court has observed, in enacting the felon-in-possession statute "Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States." *Huddleston v. United States*, 415 U.S. 814, 824 (1974). Congress therefore prohibited the possession of firearms by felons, seeking to "keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Small v. United States*, 544 U.S. 385, 393 (2005) (internal quotation marks omitted).

Also troubling is the nature of the firearm that Balenger possessed. It had a laser sight, a tool that enables the shooter to locate and hit a target more

quickly and more accurately. This suggests that the firearm was not just for show or precaution—there was anticipation that it would be used.



Gov't Motions Hearing Ex. 4, the firearm Balenger caried, with the green laser sight activated.

Balenger has claimed that he has no recollection of the events of November 9 (referring to them as "all a big blank"), and has speculated that someone may have slipped something in his drink at a bar earlier that night. (PSR ¶ 13.) With all due respect to Balenger, this account is not credible. While the United States agrees that Balenger was intoxicated, he was able to sprint through an apartment complex and leap over a fence, fleeing several pursuing officers, and was able to continue to struggle with officers when they

apprehended him. *See* Mot. Hr'g Tr. 10–16, Feb. 7, 2020 (describing Balenger's extended flight through the complex and subsequent struggle with a police officer, in which the officer expressed concern that Balenger was attempting to reach for his gun).

This athleticism, dexterity, and presence of mind do not suggest extreme intoxication—there were no indicia of extraordinary incapacitation by drugs of alcohol (stumbling, confusion, incoherence, etc.). Balenger skillfully eluded several police. Far more likely is that Balenger obtained a firearm when he returned to St. Paul, had drinks a bar following what was no doubt a very painful and very sad funeral, and ran from police officers because he knew he was not allowed to have a gun. Balenger's attempts to minimize this conduct are unavailing.

Balenger's flight is also consistent with prior incidents when he encountered police following crimes: he has fled police three prior times. (PSR ¶ 31 (flight on foot from a vehicle stop while in possession of a firearm), ¶ 32 (flight on foot from a vehicle stop), ¶ 36 (flight as a passenger in a vehicle, after which he gave his brother's name).)

A significant sentence is necessary to reflect the seriousness of this offense, and to provide just punishment.

### B. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public.

By the same token, a lengthy sentence is necessary to deter Balenger and to protect the public from him.

Balenger has a significant criminal history that is replete with firearms and violence. He obtained his first felony conviction in 2009, at the age of 18, after he was caught carrying a firearm with an obliterated serial number. (PSR ¶ 31.) Four days after his arrest in that offense, he fled a vehicle stop, and obtained a conviction of fleeing a police officer. (PSR ¶ 32.) About two months later, he committed a violent domestic assault, and chased the victim as she tried to call the police. (PSR ¶ 33.)_ Between October of 2009 and August of 2011, Balenger committed two thefts, possessed drugs, and twice gave false names to peace officers, each resulting in a separate conviction. (PSR ¶¶ 34–37.) In 2012 he slapped and choked a woman, breaking her car window as she drove away. (PSR ¶ 38.) In 2012 he was arrested with 2.3 grams of cocaine base, resulting in a felony drug conviction. (PSR ¶ 40.) Also in 2012, he was involved in an altercation in a liquor store in which he fired at a vehicle that was driving away, striking a man in the leg. (PSR ¶ 41.) This resulted in a felony conviction of 2nd Degree Assault, and a term of imprisonment of 39 months. (*Id.*) In 2014, he committed an armed robbery of an apartment building, yielding another felony conviction and a term of

CASE 0:19-cr-00318-JRT-ECW   Doc. 113   Filed 06/20/22   Page 7 of 8

imprisonment of 58 months. (PSR ¶ 45.) In 2018, he committed a fraud/theft by check. (PSR ¶ 46.)

With 16 criminal history points, Balenger is firmly in the most serious criminal history category. (PSR ¶ 48.)

The United States recognizes that Balenger's criminal history escalated and peaked in 2014; since then, it has substantially decreased, and his conduct on supervised release has improved. (PSR ¶ 45–46.)

The United States also recognizes that Balenger faced significant challenges growing up, including exposure to physical abuse and violent crime, including the murder of a close friend in front of him. (PSR ¶ 65.)

However four prior felony convictions and substantial prior sentences of imprisonment were insufficient to prevent Balenger from returning to his old ways as soon as he arrived back in St. Paul. Balenger was 28 years old when he committed the instant offense—still a young man, but old enough now to know better than to continue to associate himself with guns and gangs.

A significant sentence is now necessary to finally deter the Defendant and to protect the public from his offenses.

## **CONCLUSION**

In light of all the facts of the facts in this case, and pursuant to the sentencing objectives of 18 U.S.C. § 3553(a), the United States asks this Court to sentence the Defendant to a term of imprisonment of between 92–115 months.

Date: June 20, 2022

                                                            Respectfully Submitted,

                                                            ANDREW M. LUGER
                                                            United States Attorney

                                                            *s/ Thomas Calhoun-Lopez*

                                                            BY: THOMAS CALHOUN-LOPEZ
                                                            Assistant U.S. Attorney
                                                            Attorney ID No. 480908DC